541 So.2d 256 (1989)
STATE of Louisiana
v.
Armand J. LABRANCH.
No. 88-KA-1538.
Court of Appeal of Louisiana, Fourth Circuit.
March 14, 1989.
Writ Denied June 30, 1989.
*257 Harry F. Connick, Dist. Atty., Guy E. Weigel, Asst. Dist. Atty., New Orleans, for State.
Bryan Pedeaux, New Orleans, for defendant-appellant.
Before CIACCIO, WARD and PLOTKIN, JJ.
PLOTKIN, Judge.
Defendant Armand LaBranch appeals the trial court's denial of his motion to suppress the evidence. We reverse.
The defendant entered a Crosby plea of guilty to the charge of possession of phencyclidine, after his motion to suppress the evidence was denied. His sentence of three years at hard labor was suspended and he was placed on two years active probation, ordered to serve seven weekends in parish prison and to pay court costs. The defendant appeals the denial of the motion to suppress pursuant to his entrance of the Crosby plea of guilty.

FACTS
On May 17, 1987 at about 6:00 p.m., New Orleans Police Officer Dabdoub and his partner, Officer Laumer, were dispatched on an anonymous call to headquarters relative to a possible drug transaction in the 8800 block of Olive Street. The caller said that a black male dressed in a black leather cap, a black shirt and gray pants was selling drugs to passers-by. When the officers arrived at the location they found no one meeting the description given them. For the next few days at about the same time of day they returned to that location to investigate. On May 21, 1987, at 5:30 p.m. they saw the defendant, a black male in his twenties, wearing a brown leather sunvisor, standing on the corner talking to another male. Officer Dabdoub testified that the defendant was in some sort of transaction, although he admitted that he did not see any object or cash transfer between the two subjects. He further testified that the defendant was not acting nervously or furtively when the police arrived at the scene. On cross-examination the officer confirmed that the defendant went into the corner grocery store after seeing the police and the other subject stood outside on the sidewalk.
The testimony established that when the defendant turned to go into the store the officer saw a bulge in his pocket which he believed to be a handgun. The officers followed the defendant into the store and observed him standing in line behind three or four people. The officer stated that as he and his partner were approaching the defendant they made known to him that they were approaching him in particular. The officer's testimony is conflicting as to whether he patted down the back pocket of the defendant first, or, as he says later, knew without patting him down that the bulge was not a weapon. He proceeds on the latter account of the facts and testifies that as he approached the defendant he looked in his back pocket and saw, in plain view, a clear plastic jar containing several individual foil packets, which he stated were very common for packaging narcotics. The officer then seized the jar from defendant's pocket. He saw seven foil packets and some loose green vegetable matter at the bottom of the jar.
Subsequent to the seizure, the officer examined one of the foil packets to confirm his suspicions that the jar contained narcotics. The defendant was searched and found to be in the possession of $66.00. He was then placed under arrest and read his Miranda rights. The officer testified that while the defendant was in the police car on the way to the police station, he told the officer that he was selling drugs to pay his light bill.

ADMISSIBILITY OF THE EVIDENCE
The defendant argues that the evidence is inadmissible because it was not seized pursuant to a warrant. The State seeks to *258 justify the warrantless search on the basis of one of the exceptions to the warrant requirementeither because it was a frisk incident to a lawful stop (the Terry exception) or because the contraband was in plain view. However, the defendant argues that not enough reasonable suspicion to justify a Terry stop was present and therefore the police had no justification to conduct a Terry pat-down. The defendant further contends that the plain view exception to the warrant requirement to search is not applicable.
A search conducted without a warrant issued on probable cause is per se unreasonable, subject only to a few specifically established and well-delineated exceptions. State v. Marks, 337 So.2d 1177 (La.1976). In the instant case evidence was seized without a warrant. Therefore, the reversal of the denial of the motion to suppress turns on whether a valid exception to the warrant requirement was present at the time of the search.
Frisk Incident to a Lawful Stop
One exception to the warrant requirement allows a frisk incident to a lawful Terry stop. A law enforcement officer may stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense. La.C.Cr.P. art. 215.1. Only if there is this constitutional minimum for a stop can there be grounds for a frisk incident to the stop. The grounds for the limited pat-down are narrowly construed to exist only when a police officer fears for his safety. The sole justification for a "pat-down" search of a person is the safety of the officer and others and, thus, the scope of the search must be limited to the discovery of weapons. State v. Reed, 388 So.2d 776 (La.1980). If evidence is discovered incident to the frisk, it can be seized without issuance of a warrant.
The first inquiry must be whether the police had the reasonable suspicion to effect a Terry stop. In the case at bar, this standard of reasonable suspicion necessary to effect a Terry stop was not present. The information received through the anonymous informant was not only stale, having been received four days earlier, but was hardly definitive in identifying the defendant. Officer Dabdoub testified that there was no evidence that a crime was being committed when he and his partner first reached the scene. The officer stated that when he first saw the defendant he was in the company of another subject who was involved in some sort of transaction. However, Officer Dabdoub indicated on cross-examination that he saw nothing being exchanged between the two men and that they did not appear to be acting nervously when the police first arrived on the scene. Under this version of the facts, reasonable suspicion of criminal activity was not present. The officer admitted that he had seen nothing to indicate that a crime was being committed, therefore he had no justification for a Terry stop. He testified, though, that he pursued the defendant to pat him down for a weapon because he feared for his own safety. The officer justified his imminent pat-down without being able to justify any kind of stop.
This conduct has never been condoned by Louisiana courts. The specific exceptions to the warrant requirement are well-delineated in order to protect an individual's right to be free from governmental interference. The exceptions require justification for any infringement of that right. In the case at bar, the reasonable suspicion necessary for a lawful stop is not present. The facts do not support the exception to the warrant requirement that would allow evidence to be seized when it is discovered during a frisk incidental to a lawful stop.
Plain View
The Louisiana Supreme Court clarified the law on "plain view" in State v. Parker, 355 So.2d 900 (La.1978). The court stated that "plain view" was not an exception to the requirement that a search or seizure must be supported by a warrant issued by a magistrate upon a finding of probable cause. "Plain view serves to provide a means of securing probable cause, and absent the applicability of one of the true exceptions to the warrant requirement, nothing more." Id. at 903. The *259 court maintained that without a warrant, a seizure of material in "plain view" would be in violation of the Fourth Amendment of the United States Constitution and Article 1 Section 5 of the Louisiana Constitution, unless made with probable cause and exigent circumstances, or incident to a lawful arrest while making a genuine inventory. Id. at 902.
To determine if evidence can be classified as being in "plain view" the court has fashioned criteria that must be met by an officer who wants to use this as a prelude to seizure without a warrant. In State v. Pomes, 376 So.2d 133, 135 (La.1979), the court established the following factors:
(1) That there be a prior justification for police intrusion into a protected area;
(2) That the evidence be discovered inadvertently;
(3) That it be immediately apparent, without close inspection, that the items are evidence or contraband.
Assuming, arguendo, that the first two requirements are met, we find that, without closer inspection, it was not immediately apparent that the evidence was contraband. In the case at bar, the foil packets were apparent, not the contents. Without further inspection the officer could not determine that the contents were contraband. Accordingly, this seizure does not fall under the plain view analysis.

CONCLUSION
The seizure of the vial from the defendant's back pocket does not fall within one of the specific exceptions to the warrantless search requirement. Therefore, the trial court's ruling on the motion to suppress is reversed and the motion to suppress the evidence is granted. The case is remanded to the District Court for further proceedings consistent with this opinion.
WARD, J., dissents.
WARD, Judge, dissenting.
Because I believe the State met its burden to prove the admissibility of evidence seized without a warrant, I respectfully dissent from the majority opinion.
Officer Dabdoub testified he and his partner patrolled the area in which LaBranch was arrested pursuant to a complaint from an unnamed resident of the area that drugs were being sold to passers-by. While at the time of arrest several days after the initial complaint, LaBranch was not wearing clothing fitting the description of the alleged perpetrator, he was nonetheless wearing a cap or visor similar to the description given and was in the area at the time of day the informant said the transactions were occurring.
Observing "some sort of transaction" the officers approached, whereupon LaBranch "became very nervous", turned, walked away from the other suspect, and entered a corner grocery store. As LaBranch turned and walked away, "... it was very obvious that his right rear pocket was a large bulge, which [the officer] thought very possibly was a weapon...". As the officer approached LaBranch to pat him down for the suspected weapon, Officer Dabdoub plainly viewed in LaBranch's pocket a clear plastic jar containing several individual foil packets. (Tr. 9). Suspecting, from past experience that the foil packets, "... which [are] very customary and very common for packaging for narcotics ..." contained contraband, the officer seized the jar and arrested LaBranch.
I agree with the majority that the facts in this case do not present a Terry situation.
This seizure, however, does fall within the "plain view" exception to the rule that warrantless seizures are unreasonable. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) rehearing denied 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120 (1971); State v. Brown, 370 So.2d 525 (La.1979). The evidence showed LaBranch was in the store with his back turned to the officer when he entered, approached him, and observed the jar and the tin foil packages with it before he stopped LaBranch to arrest him. When the officer observed the jar and the tin foil packets within LaBranch's pocket, he had probable cause to make an arrest, and they had the right to seize evidence which was in plain *260 view before informing LaBranch that he was under arrest.
The question is not whether the tin foil packets may have contained something other than narcotics. The only question is whether the hand-wrapped tin foil packets more probably than not contained narcotics. The observation of tin foil packets, coupled with the prior informant's tip and the observation of the police officer of what appeared to be a narcotic transaction most certainly gave the officer probable cause. See, State v. Commodore, 418 So. 2d 1330, 1333 (La.1982). Moreover, the officer was compelled by exigent circumstances to retrieve the jar without obtaining a search warrant because LaBranch could easily elude the police, disposing of the evidence in the time required to obtain a warrant.