670 So.2d 704 (1996)
STATE of Louisiana
v.
Patrick J. CLAY.
No. CR95-814.
Court of Appeal of Louisiana, Third Circuit.
March 6, 1996.
*705 Richard Paul Weimer, Michael Harson, Lafayette, for State of Louisiana.
G. Paul Marx, Lafayette, for Patrick James Clay.
Before COOKS, PETERS and GREMILLION, JJ.
PETERS, Judge.
The defendant, Patrick Clay, was charged with possession of cocaine with intent to distribute, a violation of La.R.S. 40:967(A). After trial, a jury returned the responsive verdict of guilty of possession of cocaine, a violation of La.R.S. 40:967(C). The trial court sentenced the defendant to twentyfour months at hard labor, and he has appealed his conviction, asserting four assignments of error. Because we find merit in the defendant's fourth assignment of error, we pretermit addressing his remaining assignments.

FACTS
On March 6, 1993, undercover officers of the Lafayette Police Department were conducting an operation to interdict street-level drug activity on the 300 block of Thirteenth Street within the city. While conducting the operation, two of the officers, Officer Charmaine Breaux Domingue and Officer Nolvey Stelly, Jr., were flagged down by an individual named Dwight Sam. Officer Stelly told Sam that he wanted to purchase crack cocaine. Sam went across the street to a vehicle that was backed up and parked in a yard, leaned into the driver's window of the vehicle, and returned to the officers with a rock of crack cocaine. He then gave Officer Stelly the cocaine and received a marked twenty-dollar bill in exchange. Sam returned to the parked vehicle from which he had obtained the cocaine and again leaned into the driver's window. Officer Domingue *706 advised a police take-down team of the transaction.
Other officers arrived and arrested Sam. The officers then told the driver and other occupant of the vehicle from which Sam obtained the cocaine to exit the vehicle, but they refused. After the occupants repeatedly failed to comply with requests to exit the vehicle, one of the officers broke a rear window and the individuals were removed from the vehicle. The driver was identified as Albert George. The defendant was the other occupant and had been sitting in the front passenger seat. The officers seized a medicine bottle containing thirteen rocks of crack cocaine, which was sitting on the vehicle's console between George and the defendant.

OPINION
By his fourth assignment of error, the defendant contends that the verdict at trial is not supported by the evidence which did not establish defendant's guilt or exclude every reasonable hypothesis of innocence. The defendant contends that his conviction was based solely on his presence and that no testimony was presented to show he had either actual or constructive possession of the seized cocaine.
When the issue of the sufficiency of the evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983). It is the fact finder's role to weigh the respective credibilities of the witnesses, and therefore, the appellate court should not second-guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. State ex rel. Graffagnino, 436 So.2d 559.
In order to convict a defendant for possession of cocaine under La.R.S. 40:967(C), the state must prove beyond a reasonable doubt that the defendant knowingly or intentionally possessed the cocaine. State v. Jones, 94-1261 (La.App. 3 Cir. 5/17/95); 657 So.2d 262. The determination of whether there is sufficient evidence to convict a defendant of possession depends on the peculiar facts of each case. State v. Trahan, 425 So.2d 1222 (La.1983). Guilty knowledge is an essential element of the crime of possession, and guilty knowledge and intent may be inferred from the circumstances of the transaction. State v. Edwards, 354 So.2d 1322 (La.1978). Constructive possession is sufficient to violate the prohibition against possession, and a person may be in constructive possession of a drug, even though not in physical possession, if it is subject to his dominion and control. State v. Sweeney, 443 So.2d 522 (La.1983). Additionally, a person may be deemed to be in joint possession of a drug which is in the physical custody of his companion if he willfully and knowingly shares with his companion the right to control it. State v. Smith, 257 La. 1109, 245 So.2d 327 (1971). However, the mere presence of an individual in an area where the drugs are found or the mere association with a person found to be in possession of the drugs is insufficient to constitute constructive possession. State v. Bell, 566 So.2d 959 (La.1990).
In State v. Reynaga, 93-1520, p. 9 (La. App. 3 Cir. 10/5/94); 643 So.2d 431, 436 [quoting State v. Tasker, 448 So.2d 1311 (La. App. 1 Cir.), writ denied, 450 So.2d 644 (La.1984) citing Bujol v. Cain, 713 F.2d 112 (5th Cir.1983), cert. denied, 464 U.S. 1049, 104 S.Ct. 726, 79 L.Ed.2d 187 (1984)], this court discussed several factors to be considered in determining whether a defendant exercised dominion and control over narcotics sufficient to constitute constructive possession:
"... a defendant's knowledge that illegal drugs are in the area; the defendant's relationship with the person found to be in actual possession; the defendant's access to the area where the drugs were found; the evidence of recent drug use by the defendant; the defendant's physical proximity to the drugs; and any evidence that the area was frequented by drug users."
In the instant case, Sergeant Tom Warren of the Lafayette City Police Department *707 testified that on March 6, 1993, a Metro Narcotics Unit was conducting an undercover operation. Officer Warren was informed by undercover officers that they had just made a drug buy from a subject who received the drugs from two individuals in a vehicle parked at 311 Thirteenth Street and that the subject had taken the money and given it to the individuals in the vehicle. Other officers arrived at the scene and arrested the middleman, Dwight Sam. At least five officers were at the scene.
When Officer Warren arrived at the scene, the two subjects, Albert George and the defendant, were still inside the vehicle and refused to exit the vehicle when ordered to do so. Rather, George and the defendant rolled up the windows and locked the doors. Both George and the defendant told the police officers that they would need a warrant to get inside the vehicle. George, the driver of the vehicle, tried to leave the scene but was blocked by a police unit. A drug dog was brought to the scene and made a positive alert for drugs. Officer Warren called his superior, Captain Bob Johnson, for advice. Captain Johnson happened to be with Police Chief Gary Copes, and the two men went to the scene. Chief Copes advised the individuals to exit the vehicle or the officers would break the window and remove them. Neither George nor the defendant exited the vehicle within the allotted time, and one of the officers broke a rear window of the vehicle. Both individuals were subsequently removed from the vehicle and placed under arrest. A loaded handgun was found under the driver's seat, and a closed medicine bottle containing thirteen rocks of crack cocaine was retrieved from the vehicle's console, which was located between the driver's seat and passenger's seat. The marked police money was found in George's possession. Sam testified that he obtained the cocaine from George and that he gave the money to George.
The vehicle was parked at George's mother's house at 311 Thirteenth Street in Lafayette, Louisiana. George and the defendant are cousins. At the time of the incident, the defendant was living in Port Arthur, Texas, with his wife and two children. On the day of the incident, the defendant, his wife, and his children arrived in Lafayette for a funeral. After leaving the funeral home, the defendant eventually went to his aunt's house and noticed George's vehicle. According to the defendant, he entered George's vehicle and talked with him for a while. The defendant testified that Sam came up to the window of the vehicle and gave George $20.00 that he owed George. He testified that he did not remember Sam coming to the vehicle twice. The defendant denied seeing any drugs in the vehicle. According to the defendant, it was his intention to exit the vehicle when ordered to do so but he became afraid when he was threatened by one of the officers.
In Bell, 566 So.2d at 959, when police officers approached a vehicle to request that the music be turned down, one of the officers saw through the driver's side window "a distinctively wrapped package containing a white powder among cassette tapes on a plastic console placed over the transmission hump of the car." Both the driver and passenger were convicted of attempted possession of cocaine. The Louisiana Supreme Court reversed the conviction and sentence of the passenger because the state had presented no evidence that the passenger exercised any control over the driver's car, that he had any other drugs in his possession on his person, that he appeared under the influence of narcotics, or that he had possession of any drug paraphernalia. The court stated that the jury could have reasonably concluded that the passenger was aware of the package and its contents on the console of the car. However, the court concluded:
From [the passenger's] mere presence in the car close to the sealed package on the console between the two men, a rational factfinder could not have concluded that, even assuming he was aware of the contents, [the passenger] exercised control and dominion over the package, or that he willfully and knowingly shared with [the driver] the right to control it.
Id. at 960.
In the instant case, as in Bell, the state presented no evidence that the defendant had any other drugs on his person, that *708 he appeared under the influence of narcotics, or that he had possession of any drug paraphernalia. Additionally, Officer John Trahan, who observed the bottle containing the cocaine on the middle console, testified that the bottle was closed. We note that in State v. Johnson, 404 So.2d 239 (La.1981), cert. denied, 456 U.S. 925, 102 S.Ct. 1970, 72 L.Ed.2d 440 (1982), the court held that active cooperation in an attempt at drug disposal is adequate evidence, in combination with proximity to a drug or association with the possessor, to establish a prima facie case of drug possession. However, we do not find that the defendant's refusal to exit the vehicle can be construed as active cooperation in an attempt at drug disposal. The state did not present any evidence that the defendant attempted to dispose of the drugs, and after the arrest of the defendant, the drugs were observed on top of the middle console of the vehicle. Additionally, apart from participating in locking the doors and rolling up the windows, the state offered no evidence to show that the defendant exercised any control over the vehicle.
While the jury could have reasonably found that the defendant was aware of the medicine bottle and its contents as well as the drug sale, a rational fact finder could not have concluded that the defendant exercised dominion and control over the crack cocaine. Thus, we reverse the defendant's conviction and sentence for possession of cocaine in violation of La.R.S. 40:967(C) and order that he be discharged from further custody on that charge.
REVERSED.
GREMILLION, J. dissents and would affirm the conviction.