JAMES F. McKAY III, Judge,
 

 h STATEMENT OF THE CASE
 

 On October 20, 2006, the State of Louisiana charged Andrew W. Holland (hereinafter “Holland” or “defendant”) by bill of information with one count of violating La. R.S. 40:967(C), possession of cocaine. On November 6, 2006, Holland appeared before the trial court for arraignment and pled not guilty to the charge. On February 14, 2007, the trial court heard defendant’s motion to suppress evidence, motion to suppress confession, motion to suppress identification, and held a preliminary hearing. At the close of the hearing, the trial court denied defendant’s motions to suppress evidence, found sufficient probable cause to substantiate a charge of simple burglary, and held that the motions to suppress identification and confessions were moot.
 

 On May 7, 2008, the State brought its case against Holland to trial. Prior to trial, Holland elected to have his case tried before the judge. The State introduced three exhibits and presented testimony from one individual. The defendant introduced no exhibits and testified on his own behalf. After the close of evidence and
 
 *779
 
 oral argument, the trial court found Holland guilty of possession of cocaine.
 

 |20n June 3, 2008, Holland filed a motion for appeal with the trial court. The record in this matter was lodged with this Court on August 26, 2008. On December 3, 2008, the trial court sentenced defendant to two years at hard labor with the Department of Corrections and ordered defendant to pay $500.00 and court costs. Further, the trial court suspended the sentence and placed the defendant on three years active probation.
 

 STATEMENT OF FACT
 

 At trial the State introduced testimony from one witness, Dudley Curt Michael Johnson, a deputy with the Plaquemines Parish Sheriffs Office. Specifically, Deputy Johnson testified that he arrested the defendant on October 10, 2006, on Highway 23 at its intersection with Engineer’s Road in Plaquemines Parish. Deputy Johnson explained that the defendant’s arrest came about as a result of a traffic stop. Deputy Johnson explained that he stopped the vehicle because it had an expired license plate. Deputy Johnson further testified that the car was occupied by two people. Deputy Johnson first spoke with the driver, James C. Moore. Deputy Johnson testified that Moore informed him that he was the owner of the vehicle and that he and the guest passenger were first going to get gasoline and then they were going to a boat in Empire, Louisiana. Deputy Johnson testified that Empire, Louisiana is approximately forty to fifty miles from the site of the stop, which is closer to Belle Chase, Louisiana. Deputy Johnson next spoke with the defendant, who informed him that they were on their way to a store to get something to eat.
 

 Deputy Johnson explained that his suspicions were aroused as a result of the conflicting stories given by Moore and the defendant. Accordingly, Deputy Johnson questioned the men further, asking them specifically whether there were ^narcotics in the vehicle. Deputy Johnson asked Moore if he would consent to a search of the vehicle, and Moore agreed. Both Moore and the defendant exited the vehicle while Deputy Johnson searched the vehicle. Deputy Johnson testified that he found one white, rock-like substance under, the passenger seat of the vehicle. Deputy Johnson conducted a field test on the item, and it tested positive for cocaine. Deputy Johnson noted that the defendant was sitting in the passenger seat. Accordingly, Deputy Johnson then arrested the defendant and Moore and continued searching the vehicle. Further investigation of the vehicle revealed two further white, rock-like items under the driver’s seat. Additionally, Deputy Johnson testified that he observed a soda can in the center console which was found to contain two glass pipes. Deputy Johnson noted that the pipes were of a type used for smoking crack cocaine and that the soda can was accessible to both the driver and the passenger of the vehicle. Officer Johnson testified that both Moore and the defendant denied ownership of the narcotics. Finally, Deputy Johnson identified the defendant as the guest passenger as well as State’s exhibits one and two. On cross-examination, Deputy Johnson admitted that he had no way of knowing who put the narcotics under the seat or who owned the two glass pipes. Following Deputy Johnson’s testimony the State rested its case.
 

 The record indicates that Holland testified on his own behalf. Specifically, the defendant testified that he resides in Mor-rispoint, Mississippi and that he works at Daybrook Fisheries in Empire, Louisiana. Holland testified that Moore was his captain at the time. Further, Holland testified that on the night of the incident he was working at the fishery when Moore
 
 *780
 
 called him and asked if he wanted to drive with him to get some food and gas for Moore’s truck. Holland stated that the only place open at that time of night that had both food and gas was near where they Uwere stopped by Deputy Johnson. Additionally, Holland testified that he did not know that crack cocaine was under his seat on the night of the incident. Likewise, Holland also stated that he did not know that the soda can in the center console of the vehicle contained two crack pipes.
 

 On the other hand, Holland admitted to having one prior conviction for driving while intoxicated but noted that his DWI conviction occurred in North Carolina over ten years prior to his trial testimony. Further, while he denied smoking crack cocaine on the night of the incident, Holland admitted to smoking it once approximately ten years prior to trial. Further, Holland testified that other people had used Moore’s truck. Specifically, Holland stated: “Well he [Moore] had the guys that was working on his house during the time of the storm, they was driving his truck back and forth getting supplies for him, you know, for his house. That’s what he told me at the time, so I’m assuming whoever had his truck was using it.” After Holland testified, the State and defense submitted the matter to the trial court which found the defendant guilty of possession of cocaine.
 

 ERRORS PATENT
 

 A review of the record for errors patent reveals the court granted Holland’s appeal on June 3, 2008 prior to his sentencing on December 3, 2008. Although an appeal may be taken only from a conviction and sentence, this court has held that it is not necessary to dismiss an appeal taken after conviction but before sentencing because “[dismissing the appeal would simply result in a delay of the appellate process and hinder defendant’s right to appeal.”
 
 State v. Coldman,
 
 99-2216, p. 4 (La.App. 4 Cir. 8/30/00), 769 So.2d 131, 134, citing
 
 State v. Martin,
 
 483 So.2d 1223, 1225 (La.App. 4 Cir.1986) and
 
 State v. Thompson,
 
 98-0988 (La.App. 4 Cir. 1/26/00), 752 So.2d 293. Accordingly, this error is harmless.
 

 I.,DISCUSSION
 

 ASSIGNMENT OF ERROR NUMBER 1
 

 In his sole assignment of error, the defendant contends that the evidence adduced at trial was insufficient to support his conviction for possession of cocaine. Specifically, the defendant contends that the evidence was insufficient to establish that the defendant was in constructive possession of the cocaine found under the seat of the car in which he was a guest passenger. On the other hand, the State notes that the defendant stipulated to the fact that the three white, rock-like items found in Moore’s car tested positive for cocaine. Thus, the State notes correctly that it was obligated only to prove that Holland was in possession of the cocaine and had the general intent to possess the cocaine. Accordingly, the State asserts that the direct and circumstantial evidence presented at trial is sufficient to sustain the defendant’s conviction for possession of cocaine.
 

 The constitutional standard for testing the sufficiency of the evidence, enunciated in
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt.
 
 State v. Rosiere,
 
 488 So.2d 965 (La.1986). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime.
 
 State v. Mussall,
 
 523
 
 *781
 
 So.2d 1305,1311 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do.
 
 State v. Shaw,
 
 2007-1427, p. 15 (La.App. 4 Cir. 6/18/08), 987 So.2d 398, 408. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier’s view of all the evidence most [¿favorable to the prosecution must be adopted.
 
 Id.
 
 The fact finder’s discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law.
 
 Id.
 
 “[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence.”
 
 State v. Smith,
 
 600 So.2d 1319, 1324 (La.1992)
 
 citing State v. Rosiere,
 
 488 So.2d 965, 968 (La.1986).
 

 In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience.
 
 State v. Shapiro,
 
 431 So.2d 372, 378 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from
 
 Jackson v. Virginia,
 
 but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt.
 
 State v. Wright,
 
 445 So.2d 1198, 1201 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard.
 
 State v. Jacobs,
 
 504 So.2d 817, 820 (La.1987). If a rational trier of fact reasonably rejects the defendant’s hypothesis of innocence, that hypothesis fails; and, unless another one creates reasonable doubt, the defendant is guilty.
 
 State v. Captville,
 
 448 So.2d 676, 680 (La.1984).
 

 In this case, the defendant was convicted of possession of cocaine which is defined by La. R.S. 40:967(C). As this Court noted in
 
 State v. Guillard,
 
 98-0504, p. 4 (La.App. 4 Cir. 4/7/99), 736 So.2d 273, 276:
 

 |7To support a conviction for possession of cocaine, the State must prove that the defendant was in possession of the illegal drug and that he knowingly possessed it.
 
 State v. Lavigne,
 
 95-0204 (La.App. 4th Cir.5/22/96), 675 So.2d 771,
 
 writ den.,
 
 96-1738 (La.1/10/97), 685 So.2d 140;
 
 State v. Chambers,
 
 563 So.2d 579 (La.App. 4th Cir.1990). The State need not prove that the defendant was in actual physical possession of the cocaine; constructive possession is sufficient to support a conviction ...
 

 The elements of knowledge and intent are states of mind and need not be proven as facts, but rather may be inferred from the circumstances. The factfinder may draw reasonable inferences to support these contentions based upon the evidence presented at trial.
 
 State v. Reaux,
 
 539 So.2d 105 (La.App. 4th Cir.1989).
 

 Additionally, this Court has held that “mere presence in an area where drugs are found is insufficient to establish constructive possession.”
 
 State v. Toups,
 
 2000-1944, p. 5 (La.App. 4 Cir. 10/8/03), 859 So.2d 768, 772. Further, factors to be considered in determining whether a defendant exercised dominion and control over drugs are: 1) the defendant’s knowledge that illegal drugs were present in the area; 2) the defendant’s relationship with the person in actual possession; 3) the defendant’s access to the area where the drugs were found; 4) evidence of recent drug use; 5) the defendant’s proximity to the drugs; and 6) evidence that the area was being frequented by drug users.
 
 Id.
 

 
 *782
 
 In the present case, the record establishes that Deputy Johnson stopped Moore’s vehicle because of an expired license plate. After receiving inconsistent stories from Moore and the defendant concerning their presence at the scene, Deputy Johnson asked both men to leave the vehicle and obtained permission from Moore to search the vehicle. Deputy Johnson’s search of the vehicle resulted in the discovery of two rocks of crack cocaine under Moore’s seat, one rock of crack cocaine under the defendant’s seat, and two glass pipes both of which were charred on one end with copper mesh and containing cocaine residue on the other end. | sDeputy Johnson then arrested Moore and the defendant for possession of narcotics.
 
 [1]
 
 Further, the defendant testified at trial that he was unaware of the presence of the glass pipes and crack cocaine in the car and also testified that Moore allowed other people to use his truck.
 

 The record indicates that the defendant denied any prior knowledge of the crack cocaine and glass pipes found in Moore’s vehicle. On the other hand, the record indicates that the trial court thought little of the defendant’s protestations, insinuating that he and Moore’s story of traveling approximately forty miles to purchase gasoline and food was not credible. Thus, the trial court surmised that the defendant’s suspect account called into question his denial of culpability. The trial court’s credibility call on this point is buttressed by the fact that the State elicited testimony from Deputy Johnson to the effect that Moore and the defendant did not need to travel forty miles to secure gasoline. The State did not rebut the defendant’s assertion that their alleged destination was the nearest establishment open late at night that sold both gasoline and food.
 

 The record indicates that Moore and the defendant were co-workers. Specifically, Moore was the defendant’s captain at Day-brook Fisheries in Empire, Louisiana. However, the record is silent as to any other details concerning the nature or quality of the defendant’s relationship with Moore. In regards to the defendant’s access to the area where the drugs were found, the record indicates that Deputy Johnson found one rock of crack cocaine directly under the defendant’s seat in Moore’s vehicle. Further, the record indicates that Deputy Johnson found two used crack pipes concealed within a soda can in the vehicle’s center console. | aThus, it is conceivable that while the contraband items were concealed, the crack cocaine and the two pipes were accessible to the defendant. Likewise, the record indicates that the defendant was in very close proximity to the concealed contraband.
 

 As for evidence of recent drug use, the record reveals that Deputy Johnson discovered two glass pipes which exhibited charring on one end and cocaine residue on the other. However, the record is silent as to whether Deputy Johnson found any lighters or ignition devices in the car or on the person of Moore and the defendant. Additionally, the defendant asserted that he had not smoked crack cocaine for at least ten years. Indeed, the State failed to adduce any evidence to suggest that the either of the two pipes found were warm, that defendant was under the influence of crack cocaine at the time of his arrest, or whether the defendant’s fingerprints were on either of the two pipes. Lastly, the record is silent as to whether the area in which the defendant was arrested was frequented by drug users. Accordingly, the evidence is equivocal as to whether the defendant knew that the crack cocaine was in the vehicle and had the requisite domin
 
 *783
 
 ion and control over the narcotics to sustain Ms conviction and sentence.
 

 Upon review of the applicable jurisprudence, both this Court and the Louisiana Supreme Court have held in similar cases that the evidence was insufficient to conclude beyond a reasonable doubt that the contraband was subject to a given defendant’s dominion and control. For example, in
 
 State v. Bell,
 
 566 So.2d 959 (La.1990), the police approached a vehicle to request that the occupants, the driver and his passenger, turn down music blaring from the radio. One officer noticed a distinctively wrapped package, containing what was later determined to be cocaine, among some cassette tapes in a plastic console between jinthe front seats. Both men were convicted of attempted possession of cocaine, which convictions were affirmed by this Court. See
 
 State v. Davis,
 
 555 So.2d 633 (La.App. 4 Cir.1989), affd. in part and remanded in part,
 
 State v. Bell, supra.
 
 There had been no evidence presented that the passenger had any other drugs in his possession or on his person, that he appeared under the influence of narcotics, or that he had possession of any drug paraphernalia. The court also noted that the vehicle was parked only two doors from the driver’s residence. On review, the Louisiana Supreme Court found that, based on the passenger’s mere presence in the car close to the sealed package, “even assuming he was aware of the contents,” a rational trier of fact could not have concluded that the passenger exercised dominion and control over the package, or that he willfully and knowingly shared the right to control it with the driver.
 
 State v. Bell,
 
 566 So.2d at 960.
 

 In
 
 State v. Jackson,
 
 557 So.2d 1034 (La.App. 4 Cir.1990), an individual named Steele threw down drugs at the sight of police and ran into his apartment. The police followed and saw the defendant Jackson standing at a homemade bar on which were displayed a glass pipe with cocaine residue, another pipe, a mirror with trace amounts of cocaine on it, a razor blade with traces of cocaine on it, test tubes, glasses, and a bag containing a material used to cut or dilute cocaine. This Court held that because there was no indication that the residue-containing pipe was warm, that the defendant’s fingerprints were on any of the items, that the defendant tested positive for the presence of cocaine, or that the defendant was anything more than a guest in the apartment, the evidence was insufficient to establish that the defendant exercised dominion and control over the objects which had cocaine residue in or on them.
 

 InThe foregoing review of the caselaw indicates that the Louisiana Supreme Court and this Court have reversed convictions and sentences in similar factual situations.
 

 CONCLUSION
 

 Based on the facts and applicable jurisprudence, this Court finds that a rational trier of fact could not have concluded that the defendant exercised dominion and control over the package, or that he willfully and knowingly shared the right to control it with the driver. Accordingly, we reverse the judgment of the trial court and vacate the defendant’s conviction and sentence.
 

 REVERSED AND VACATED.
 

 [1]
 

 . The record indicates that Moore eventually pled guilty to the charge.